Josh T. WEST, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–45C.

United States Court of Federal Claims.

March 27, 1996.

Chuck R. Pardue, Augusta, Georgia, for plaintiff; Laura J. Beck, of counsel.

Brian S. Smith, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director James M. Kinsella for defendant; Captain Rodger A. Drew, Jr., Air Force Legal Services Agency, Arlington, Virginia, of counsel.

## OPINION

MARGOLIS, Judge.

This suit for unlawful military discharge is before the court on defendant's motion to dismiss, or in the alternative, for summary judgment, and plaintiff's cross-motion for summary judgment. After careful consideration of the record, and after hearing oral argument, the court concludes that the decision of the Secretary of the Air Force to discharge plaintiff with severance pay because of physical disability was not arbitrary and capricious, is supported by substantial evidence in the record, and is not otherwise contrary to law, regulation, or mandatory published procedure. Accordingly, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

## FACTS

Plaintiff Josh T. West first enlisted in the Air Force on July 3, 1963. In 1965, West injured his back while working as an Air Force maintenance technician, and in July 1980 he began reporting back problems to military medical authorities. After a consultation with an orthopedic surgeon, West was placed on a permanent military physical profile in July 1980, which restricted him from duties that would require lifting over 20 pounds to elbow height, jumping, or frequent bending.

Air Force Regulation 35–4 (AFR 35–4) contains the standards, rules, and procedures which apply to retiring or discharging Air Force military members who are unfit to perform military duties because of physical disability. A member cannot "apply" for disability retirement or discharge; rather, a disability evaluation begins only when the member is referred to a Medical Evaluation Board (MEB) as a result of a medical examination, treatment, hospitalization, or substandard performance. The MEB is composed of three physicians who review all medical records and make appropriate recommendations as to disability disposition.

The medical facility commander approves or disapproves the MEB's recommendations and may refer the case to the first level of disability system review, the informal Physical Evaluation Board (PEB). A PEB is a fact-finding body that investigates the nature, origin, degree of impairment, and probable permanence of the physical or medical defects or condition of the member whose case is brought before it. The PEB's findings include a compensable disability rating. A rating is not assigned until the PEB determines that the member is physically unfit for duty. A compensable disability rating is a percentage of zero or more, assigned to each ratable defect or condition by using the Vet-

erans' Administration (VA) Schedule for Rating Disabilities.

The Physical Review Council (PRC) reviews the case file, including the PEB's findings and recommendation, to ensure that disability laws, policies, and directives are uniformly and equitably applied. The ultimate administrative remedy for a dissatisfied member is an appeal to the Air Force Board for Correction of Military Records (AFBCMR).

On February 25, 1982, West requested that he be considered for an MEB. On March 30, 1982, the MEB recommended that West's records be forwarded to an informal PEB, which entered a diagnosis of low back pain, mechanical, probable degenerative disc disease (VA diagnostic code 5295), with a compensable disability rating of 40%, and recommended that West be placed on the Temporary Disability Retirement List (TDRL). The Physical Review Council concurred, as did the Secretary of the Air Force, and West was placed on the TDRL effective May 5, 1982.

On September 8, 1983, as a result of a periodic TDRL examination and recommendation of the informal PEB, the Secretary of the Air Force directed that West be removed from the TDRL. On September 23, 1983, West reenlisted in the Air Force.

In 1984 and 1985, however, West again complained of back problems. By September 1985, West's profile was updated to include restrictions from lifting or pushing objects weighing more than 20 pounds, sitting or standing for more than 20 minutes, bending or stooping, or running.

In May and September 1986, West was seen at a military hospital complaining of back pain. In December 1986, the Medical Evaluation Board diagnosed West with chronic low back pain and recommended that his records be referred to the informal Physical Evaluation Board. On January 14, 1987, the informal PEB determined that West was fit and recommended that he be returned for duty. West concurred with these findings.

In August 1987 and July 1988, however, West reported to the hospital complaining of back pain, and, as a result, he was referred for an orthopedic evaluation. (Meanwhile, on September 1, 1988, West was promoted to the grade of Master Sergeant.) In November 1988, the consulting orthopedic surgeon diagnosed West with degenerative joint disease, and in January 1989, recommended proceeding with a MEB. On January 17, 1989, the MEB rendered a diagnosis of degenerative joint disease, but recommended that West be returned to duty.

On January 23, 1989, West filed a letter of exception to the recommendations of the MEB, complaining that "[t]he summary doesn't state I'm unfit for military service." West's letter had eight attachments, including a letter from his supervisor that was endorsed by his commander. The supervisor stated that West was unable to fulfill his duties and his commander added:

I can sympathize with Msgt West's medical problem, but he is now unable to do the job. Msgt West was retrained into a job more compatible with his limitations, and reassigned within this unit to a less demanding position, but he is still not able to perform his duties. I feel that a medical separation is the only solution to resolve this problem, both for the relief of his discomfort and for the good of the Air Force.

On January 25, 1989, West placed a statement in the file that he did not desire to remain on active duty.

As a result of West's nonconcurrence with the MEB findings and recommendation, the hospital commander referred the case to an informal PEB, which met on February 1, 1989. The PEB diagnosed West with degenerative joint disease L5–S1 with osteoarthritic changes and narrowing of the disc space (VA diagnostic code 5003), with a compensable disability rating of 10 per cent. The PEB found that West was unfit for duty due to his disability, that the degree of impairment may be permanent, and recommended that West be discharged with severance pay.

On February 8, 1989, West signed a statement that he had been advised of the legal results of the findings and recommendations of the PEB and that he agreed with them. On February 10, 1989, the Secretary of the

Air Force Personnel Council indicated that the Physical Review Council (PRC) concurred with the PEB. On February 21, 1989, the Deputy Director of the Secretary of the Air Force Personnel Council wrote that the Secretary of the Air Force approved the PRC's recommendation and directed that West be discharged and receive severance pay with a disability rating of 10 per cent. On February 27, 1989, West was informed that he had the option of having another medical examination as part of his separation processing; he declined the opportunity.

On May 9, 1989, West was honorably discharged under the provisions of AFR 35–4 (Disability—Entitled to Severance Pay), with $46,288.80 in severance pay. West had served a total of 19 years, 6 months, and 9 days on active duty at the time of his discharge. West would have been eligible for full retirement benefits, including 50% of his base pay for the rest of his life, as well as medical benefits and commissary privileges if he had served 20 years on active duty. Further, if the Air Force had found a 30% or more disability, West would have been entitled to a disability retirement instead of a disability discharge with severance pay.

On August 18, 1992, West petitioned the Air Force to reconsider his medical separation. West claimed that he was "medically separated instead of medically retired, due to the incompetent handling of my medical case." He pointed out that he was rated 40% disabled in 1982, and that "in 1989, 5 months prior to retirement, I'm rated at only a 10% disability!" In the alternative, West asked why he couldn't have remained on active duty to complete those 5–plus months, if he was, in fact, only 10% disabled.

On February 9, 1993, the Air Force Military Personnel Center, Physical Disability Division (AFMPC/DPMAD), rendered an advisory opinion to the Air Force Board for the Correction of Military Records (AFBCMR), recommending no change in the disability system actions taken. However, the DPMAD stated: "One may debate whether an Air Force member within six (6) months of retirement eligibility should be considered for disability discharge in like manner to a member who had much less service. We

defer to the BCMR on this matter." On February 23, 1993, the AFBCMR rendered an advisory opinion for West's review and comments. West was given 30 days to respond to the advisory opinion. West responded on March 23, 1993, complaining that he had been treated unfairly and requesting that either his medical separation be converted to a medical retirement or that he be placed on the Temporary Disability Retired List.

On November 8, 1993, the AFBCMR denied West's August 18, 1992 petition. The Board determined that the evidence West presented did not demonstrate the existence of probable material error or injustice and that the application would be reconsidered only upon the submission of newly discovered relevant evidence.

On January 17, 1995, West filed suit in this court, abandoning his claim that the Air Force should have found him at least 30% disabled and therefore qualified for a disability retirement, and advancing his alternative argument that if he was only 10% disabled, then the Air Force acted in an arbitrary and capricious manner and against regulations by precluding him from returning to active duty. West claimed that the Secretary improperly, and without new evidence, reversed a 1987 Physical Evaluation Board which had found West fit for duty. West is seeking back pay from the May 9, 1989 date of his discharge, reinstatement into the Air Force retroactive to the date of his discharge, medical expenses incurred by himself and his dependents, and costs and attorney fees.

## DISCUSSION

### I. *Jurisdiction*

A. West's separation from the Air Force was not voluntary.

 This court's jurisdiction to hear military separation appeals is based on the Tucker Act, 28 U.S.C. § 1491, which grants the court the authority to hear claims founded upon Acts of Congress, such as pay statutes. *See Sanders v. United States,* 219 Ct.Cl. 285, 297, 594 F.2d 804 (1979).

■ If his discharge was involuntary and improper, West's right to pay under 37 U.S.C. § 204(a)(1) as "a member of a uniformed service who is on active duty" was not extinguished, and thus serves as a basis for Tucker Act jurisdiction. If, however, West's separation was voluntary, he retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim. *See Adkins v. United States*, 68 F.3d 1317 (Fed.Cir.1995).

Defendant claims that West's separation from military service was voluntary and that this court therefore does not have jurisdiction to review his claim for restoration to military service. Plaintiff contends that his separation from the military was involuntary.

Defendant cites *Sammt v. United States*, 780 F.2d 31, 32 (Fed.Cir.1985). In *Sammt*, the Federal Circuit held that a service member's voluntary retirement was not made involuntary by the fact that he would otherwise be subject to mandatory retirement. The Claims Court therefore lacked jurisdiction over his action for back pay and correction of records.

The government acknowledges that an Air Force member cannot "apply" for a disability discharge in the manner in which he can apply for a regular retirement or separation. AFR 35–4 ¶ 1–1. The government contends, however, that voluntariness is determined by examining all of the surrounding facts and circumstances. The government claims that West's discharge was the direct result of his choice to request reconsideration of a determination that he was fit for duty and his concurrence with the disability separation he thereafter received, and that therefore his disability separation was voluntary.

The government cites no case law supporting its argument that a decision of the Air Force to separate a member with a disability discharge could be construed as a voluntary retirement. The court declines the government's invitation to reach that result. Air Force Regulations specifically provide that: "There is no way for an individual to apply for disability retirement or discharge." AFR 35–4 ¶ 1–1. The government cites no case in which a voluntary discharge was found where the plaintiff did not initiate retirement proceedings.

B. West was not required to exhaust administrative remedies before bringing this claim.

■ Resort to a correction board is permissive, not mandatory, in military pay cases and exhaustion of administrative remedies is therefore not required before such cases may be heard by the court. *Kirk v. United States*, 164 Ct.Cl. 738, 743, 1964 WL 8525 (1964); *Mathis v. United States*, 183 Ct.Cl. 145, 148, 391 F.2d 938, 939 (1968); *Heisig v. United States*, 719 F.2d 1153, 1155 (Fed.Cir. 1983).

■ This is a military pay case, not a disability case, because plaintiff seeks reinstatement and back pay. Plaintiff was therefore not required to exhaust administrative remedies before seeking relief in this court.

## II. Standard of Review

■ As the Supreme Court observed more than 40 years ago, "'judges are not given the task of running the Army'"; military personnel decisions, therefore, are subject to a deferential standard of review in the courts. *Chappell v. Wallace*, 462 U.S. 296, 301–303, 103 S.Ct. 2362, 2366–2367, 76 L.Ed.2d 586 (1983), quoting *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953). The plaintiff must show that the decision was "arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature...." *Sanders v. United States*, 219 Ct.Cl. 285, 298 (1979). The Court of Claims explained the rationale behind this deferential standard:

> Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters. Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards.

*Sanders,* 219 Ct.Cl. 285 at 302 (citations omitted).

However, as "Congress conferred broad powers on the Secretaries to remedy errors and injustices ... the Secretaries have a duty as well as the power to afford servicemen proper relief." *Sanders,* 219 Ct.Cl. at 299.

Any decision made by the Secretary of the Air Force pertaining to discharge of personnel is discretionary, and therefore, "while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions." *Sanders,* 219 Ct.Cl. at 302.

This court cannot decide whether West was fit, but can decide whether the Air Force followed the proper procedures in making its determination. The Court of Federal Claims has found that the Secretary's determination of fitness or unfitness is not subject to review in the courts since "neither Congress nor the Air Force has developed sufficient 'tests and standards' against which this Court could measure the Secretary's discretionary conduct at each stage in the medical evaluation process." *Rice v. United States,* 31 Fed.Cl. 156, 167 (1994) *aff'd,* 48 F.3d 1236 (Fed.Cir.1995). The Court of Appeals for the Federal Circuit "has consistently recognized that, although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, ... '[a] court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion.' " *Adkins,* 68 F.3d 1317, quoting *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993).

*III. The Secretary of the Air Force did not act in an arbitrary and capricious manner by not returning West to active duty to complete 20 years of active duty.*

West claims that the Secretary acted arbitrarily and capriciously and that, without new evidence, the Secretary reversed a PEB finding that West was fit for duty.

In January 1987, an informal PEB recommended that West be found fit and returned to duty. In February 1989, an informal PEB recommended that West be found unfit and discharged with severance pay. West concurred in each of the PEBs and thus, in accordance with law and Air Force regulations, he has never been referred to a formal PEB.

Further, new evidence was considered by the 1989 PEB. This evidence consisted primarily of West's own pleas that he was not fit for continued active duty. As he pointed out in his letter of exception to the MEB, West's Air Force orthopedic surgeon diagnosed him in November 1988 with degenerative joint disease and opined that West was unfit for military service. West also provided the 1989 PEB with new evidence consisting of a letter from his commanding officer that West could no longer do his job and that medical separation was the only solution to resolve the problem. This latter type of evidence is specifically provided for in the Air Force disability regulation at paragraph 33(c):

> Duty restrictions will not justify a finding of unfit; however, a history of medical restraints over a period of time may be used as evidence to support such a finding. Evidence used in making fitness determinations is not limited to clinical documentation and may include effectiveness reports or statements from supervisors.

AFR 35–4 ¶ 33–3(c). Further, Air Force regulations provide that an evaluation of duty performance by the member's supervisors may have more weight than the medical report in identifying the member's actual ability to perform his duty. AFR 35–4 ¶ 33–3(g).

The AFBCMR was also provided new evidence, consisting of West's claim to be more than 30% disabled, in his search for a disability retirement. The AFBCMR's decision was neither arbitrary nor capricious, nor unsupported by substantial evidence. Extensive evidence existed in the record to support the Secretary of the Air Force's 1989 and 1993 findings that West was unfit for military service. The vast majority of this information was provided by West himself.

Plaintiff's bare allegations that he was ignorant of his rights, that his actions were not voluntary, and that he was subjected to duress, are not supported by the record. The court has considered the entire record and finds that West's discharge with severance pay did not violate the applicable regulations.

## CONCLUSION

As the decision of the Air Force to discharge West with severance pay because of physical disability was not arbitrary and capricious, is supported by substantial evidence in the record, and is not otherwise contrary to law, regulation, or mandatory procedure, the defendant's motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied. The clerk shall enter judgment for the defendant. No costs.