Robert M. MYERS

v.

The UNITED STATES.

No. 00–316C.

United States Court of Federal Claims.

Oct. 31, 2001.

Robert M. Myers, Lisbon, Ohio, pro se.

David R. Feniger, Washington, D.C., with whom was Assistant Attorney General David W. Ogden, for the defendant. Capt. Toby McCoy, Office of the Judge Advocate General, Department of the Army, of counsel.

## OPINION

YOCK, Senior Judge.

This military pay disability retirement claim is now before the Court on the defendant's motion to dismiss for lack of subject matter jurisdiction, or in the alternative, Judgment Upon the Administrative Record. The plaintiff opposes the defendant's motion to dismiss and has cross-moved for Judgment Upon the Administrative Record. The defendant contends that since more than six years have elapsed since the accrual of the plaintiff's claim, the general statute of limitations, 28 U.S.C. § 2501 (1994), bars suit in this Court.

The plaintiff claims that the Army Board for the Correction of Military Records ("ABCMR" or "Board") improperly denied his application to convert his disability discharge to a disability retirement and seeks retroactive retirement pay in conjunction with other collateral relief. For the reasons set forth herein, the defendant's motion to dismiss is granted, and the Complaint is to be dismissed. Even assuming this Court did have jurisdiction over the plaintiff's claim, the defendant would still be entitled to Judgment Upon the Administrative Record in this matter.

### Facts

The plaintiff in this case enlisted in the United States Army Delayed Entry Program on October 20, 1986 and entered active duty on November 7, 1986.[1] He served on active duty for some 6 years and 10 months, until September 13, 1993, when he was medically discharged as a result of severe chronic allergic urticaria and angioedema. The Army rated the plaintiff's conditions as 20 percent disabling and awarded him $21,156 in severance pay.

From August 29, 1990, to March 21, 1991, the plaintiff served in Saudi Arabia during Operation Desert Shield/Desert Storm where he fought honorably in combat operations against Iraqi armed forces as a member of the 24th Infantry Division. He served as his platoon's Nuclear, Biological, and Chemical Specialist and was an infantry squad leader. During the Gulf War, the plaintiff took pyridostigmine bromide tables (an anti-nerve agent medication) for protection against potential chemical weapon attacks. The plaintiff states that, after taking these tablets, his lips became swollen, he developed a bumpy red rash and became increasingly nervous. He states that he also developed diarrhea and headaches, and he complains of tinnitus which he believes was a result of acoustic trauma induced by gunfire, grenade explosions, and a head injury that he suffered

---

1. See Administrative Record ("AR") at 3, 203, 211. Unless otherwise noted, the following facts are not in dispute.

during Desert Storm in a Bradley Fighting Vehicle accident.[2]

After Operation Desert Shield/Desert Storm, the plaintiff was reassigned to Fort Stewart, Georgia, and states that while he was at Fort Stewart, he suffered from continuing illnesses such as rashes, headaches, diarrhea, nightmares, jaundice, fevers, swelling, and stomach problems. While at Fort Stewart, the plaintiff was selected to attend the Non–Commissioned Officers Basic Course, but he failed the program allegedly because he was unable to concentrate.

On March 1, 1993, the plaintiff was assigned to Camp Hovey, South Korea, and shortly after arriving, he received medical treatment for a severe rash and urticaria from March 26, 1993, to March 31, 1993. His attending physician noted that the "[p]atient is getting extremely frustrated." AR at 107. The plaintiff's Korean tour was curtailed on or about May 3, 1993, when he was medically evacuated to Walter Reed Army Medical Center ("WRAMC") in Washington, D.C., for treatment and evaluation of his urticaria.

The attending physician at WRAMC, Dr. (Colonel) Edward N. Squire, noted that the plaintiff had previously complained of the onset of recurrent rashes in August 1990, during the Gulf War. After a thorough examination, testing and evaluation, Dr. Squire diagnosed Mr. Myers with chronic urticaria and recommended a treatment regimen and a Medical Evaluation Board ("MEB") if the plaintiff's condition did not improve. From July 20, 1993, to July 23, 1993, the plaintiff

was also evaluated by the audiology clinic for possible tinnitus. The audiology report indicated that the plaintiff's hearing sensitivity was basically within normal limits, his speech understanding ability was excellent, and it contained *no* supporting diagnosis of tinnitus. AR at 108–10, 179–81.

On July 27, 1993, an MEB at WRAMC found that Mr. Myers did not meet medical retention standards due to chronic severe angioedema and urticaria and chronic allergic rhinitis. The MEB considered Mr. Myers' complete medical history, including the narrative summary of his treatment at WRAMC, and x-rays taken on May 20, 1993,[3] and recommended referral of his case to a Physical Evaluation Board ("PEB").[4]

On August 11, 1993, an Army PEB found Mr. Myers physically unfit under the Department of Veterans Affairs Schedule for Rating Disabilities ("VASRD") Code 7118 as a result of chronic angioedema and urticaria but determined that his chronic rhinitis was not "unfitting" for further service and, therefore, not ratable. The PEB recommended his separation from the Army with a disability rating of 20 percent and severance pay. AR at 4, 182.

On August 16, 1993, after being counseled regarding the findings and recommendations of the PEB, Mr. Myers agreed in writing to the PEB's findings and recommendations and waived a formal hearing.[5] On September 13, 1993, Mr. Myers was discharged from the Army by reason of physical disability with a 20 percent disability rating and severance pay.[6]

2. Pl.'s Statement of Facts ("SOF") at 1, AR at 52, 287. The Court will treat the *pro se* plaintiff's SOF as an affidavit.

3. The plaintiff also submitted a *Report of Medical History* to the MEB during his evaluation process. The plaintiff checked "yes" to the following items in Block 11: "Frequent trouble sleeping," "Depression or excessive worry" and "Nervous trouble of any sort." In Block 8, entitled "Statement of Examinee's Present Health and Medications Currently Used," the plaintiff wrote: "I have daily attacks of urticaria and angiodema (sic) and I am presently taking Atarax and Hismanol." AR at 115; Pl.'s SOF at 2.

4. AR at 4, 117–19, 184–88.

5. AR at 5, 182–83. Plaintiff checked and signed DD Form 199, Block 13, on August 16, 1993,

which indicated as follows: "I HAVE BEEN ADVISED OF THE FINDINGS AND RECOMMENDATIONS OF THE PHYSICAL EVALUATION BOARD, AND HAVE RECEIVED A FULL EXPLANATION OF THE RESULTS OF THE FINDINGS AND RECOMMENDATIONS AND LEGAL RIGHTS PERTAINING THERETO AND I CONCUR AND WAIVE A FORMAL HEARING OF MY CASE." AR at 183. Mr. Myers states he was told that he could file a claim with the VA for any *additional* disabilities. The plaintiff complains that he was frustrated, nervous, and suffered from anxieties at the time of his discharge. Pl.'s SOF at 2.

6. If a member has at least 8 but less than 20 years of service in the military, the member is **not** entitled to disability retirement pay unless "the disability is at least 30 percent under the

On August 13, 1993, Mr. Myers applied to the Department of Veterans Affairs ("VA") for disability benefits.[7] On June 23, 1994, the VA awarded plaintiff a 20 percent disability rating for his angioedema and urticaria, retroactive to September 14, 1993, but he received a zero percent "service-connected" disability rating for tinnitus and degenerative joint disease of the left knee.[8] The VA did not rate or list any undiagnosed conditions for Mr. Myers at that time, and, significantly, the VA also failed to rate him for either Post–Traumatic Stress Disorder ("PTSD") or a Major Depressive Disorder.[9]

After his discharge from the Army, the plaintiff complains that he could not obtain civilian employment as a result of the medications he was taking and that he had a difficult time adjusting to civilian life. He was hospitalized for a probable attack of meningitis in April 1994. He stated that he grew seriously depressed after his girlfriend allegedly told him that she was pregnant and that she intended to have an abortion because of her concerns about his health.

Mr. Myers also began to have other problems. In October 1993, he was stabbed in a bar fight and then later arrested on July 14, 1994, for a series of some nine armed bank robberies across New Jersey, Missouri, and Tennessee; use of a firearm in a crime of violence; carjacking; and transportation for illegal sexual activity.[10] He was subsequently incarcerated at the Federal Correction Institution, Elkton, Ohio, on or about September 5, 1997. On October 30, 1997, he was diagnosed by federal prison medical authorities as having a Major Depressive Disorder, Recurrent. AR at 36, 40, 88–89.

On September 28, 1998, five years after his discharge, the plaintiff petitioned the ABCMR to convert his disability discharge into a disability retirement,[11] claiming that the Army had failed to evaluate him properly for a Major Depressive Disorder, PTSD, as

---

standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination * * *." 10 U.S.C. § 1201(b)(3)(B) (1994 & Supp. V 1999).

**7.** The VA is statutorily authorized to provide treatment and award compensation to veterans for service-connected disabilities. A veteran is entitled to disability benefits from the VA "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty * * *." 38 U.S.C. § 1110 (1994). If the veteran has a qualifying disability, he is assigned a disability rating and compensation level based upon the reduction in his capacity to earn income from civil occupations. 38 U.S.C. § 1155 (1994). To obtain disability benefits, a veteran must first file a claim with the VA. 38 U.S.C. § 5101(a) (1994).

**8.** AR at 121–23.

**9.** *Id.* The VA deferred plaintiff's claims for allergic rhinitis, broken ankle, foot condition, meningitis, residuals of an appendectomy, chronic diarrhea, shaving profile, headaches, and nervous condition pending receipt of his service medical records and VA examinations. *Id.* On February 28, 2000, the VA awarded the plaintiff an additional ten percent rating for PTSD and a 10 percent rating for tinnitus which amounted to a total VA disability rating of 40 percent, effective April 7, 1999. Pl.'s Mot. for Disability Retirement, Ex. H; AR at 316–21. The plaintiff states that his earlier deferred claims were

deemed abandoned by the VA after the VA apparently lost track of his whereabouts as a result of his arrest. Pl.'s Mot. for Disability Retirement (Complaint) at 10.

**10.** AR at 18–21. *See also* AR at 54, 176–78; Pl.'s SOF at 3.

**11.** Congress has entrusted the primary duty of correcting military records with the correction boards. *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813–14 (1979). The ABCMR was established to implement the Secretary of the Army's discretionary authority to correct a soldier's military records: "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary *to correct an error or remove an injustice.*" 10 U.S.C. § 1552(a)(1) (1994) (emphasis added). "Corrections under this section shall be made under procedures established by the Secretary concerned." 10 U.S.C. § 1552(a)(3) (1994). If, as a result of any such correction, an amount of lost pay, allowance, compensation, or other pecuniary benefit is found to be due the claimant or his legal representative, the Secretary shall then pay this amount. 10 U.S.C. § 1552(c) (1994 & Supp. V 1999). *See generally Sanders*, 219 Ct.Cl. at 299–303, 594 F.2d at 811–14; *Sherengos v. Seamans*, 449 F.2d 333, 334 (4th Cir.1971). *See also* 32 C.F.R. § 581.3 (2000) (prescribes policies and procedures for the correction of military records by the Secretary of the Army, acting through the ABCMR.).

well as other undiagnosed illnesses.[12] The plaintiff submitted a number of supplemental documents to the Board, including his previously referenced October 30, 1997 post-discharge diagnosis for a Major Depressive Disorder as well as follow-on treatment records.

On November 17, 1999, after considering Mr. Myers' application for relief, his military records, the previous evaluations, recommendations and findings of both his MEB and PEB, and the additional supplemental documentation that he submitted, *inter alia*, the ABCMR issued its initial decision denying the requested relief. AR at 2–5. After summarizing the evidence in Mr. Myers' case, the ABCMR stated:

> In order to justify correction of a military record the applicant must show to the satisfaction of the Board, or it must otherwise satisfactorily appear, that the record is in error or unjust. The applicant has failed to submit evidence that would satisfy the aforementioned requirement.

AR at 5; *see* 32 C.F.R. § 581.3(b)(4)(iv) (2000). On January 13, 2000, Mr. Myers filed a request for reconsideration with the ABCMR consisting of a new applicant statement and eleven exhibits, which he later supplemented on January 25, 2000, and March 17, 2000.

The ABCMR, in its reconsideration of the case, specifically reviewed and considered the supplemental statements from Dr. Radford and Dr. Squire, who were both members of the plaintiff's MEB. Dr. Radford's memorandum indicated that Mr. Myers was under "emotional distress" at the time of his MEB evaluation, and Dr. Squire wrote his own undated note on the subject memo stating that he was at fault for failing to obtain a psychiatric consult at the time of the plaintiff's MEB.

The plaintiff also forwarded a letter from a psychiatrist, Dr. Robert Algaier, dated April 21, 1999, diagnosing Mr. Myers with PTSD retroactive to 1991, plus a copy of his earlier Major Depressive Disorder diagnosis by prison medical staff. He also included a letter that Dr. Squire sent to the VA, dated July 15, 1999, regarding the plaintiff's onset of tinnitus.[13] Although it is somewhat difficult to determine from the AR precisely which supplemental memoranda the Board considered in its initial November 17, 1999 decision, it is readily apparent that all of these supplemental memoranda were definitely considered by the ABCMR during its reconsideration, as they are specifically referenced in the memorandum decision. AR at 286–92.

On August 15, 2000, the ABCMR, in a very detailed seven page Memorandum of Consideration, denied the plaintiff's petition. The memorandum specifically addressed each significant issue and submission offered by the plaintiff, and it also incorporated the Board's initial November 17, 1999 decision by reference. After reviewing the case in its entirety, the ABCMR specifically found that "[t]he overall merits of the case, including the latest submissions and arguments [were] insufficient as a basis for the Board to reverse its previous decision * * * there [was] no basis for granting the applicant's request." AR at 292. Mr. Myers filed his Complaint in this Court on May 25, 2000.

## Discussion

The plaintiff contends that the ABCMR improperly denied his request to convert his disability discharge into a medical retirement as a result of the Army's failure to rate him for tinnitus, Major Depressive Disorder, PTSD, and other allegedly undiagnosed disabling conditions. He seeks retroactive disability retirement pay from the date of his discharge, in addition to related collateral relief.

The defendant maintains, however, that the ABCMR's decision was based upon substantial evidence and moves to dismiss for lack of subject matter jurisdiction, or in the alternative, for judgment upon the administrative record.

---

**12.** The plaintiff did not specifically identify tinnitus as a separate ratable condition as such in his September 28, 1998 application to the ABCMR. AR at 6, 8.

**13.** AR at 53, 56, 81.

# 680

## I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

As indicated above, the defendant contends that the plaintiff's claim is time barred and has filed a motion to dismiss for lack of subject matter jurisdiction under Rules of United States Court of Federal Claims ("RCFC") 12(b)(1), which the plaintiff opposes.

As a threshold matter, when determining whether or not the Court has jurisdiction, the Court must accept as true any undisputed factual allegations made by the nonmoving party and draw all reasonable inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir. 1989). If the undisputed facts reveal any possible basis upon which the nonmoving party might prevail, the Court must deny the motion. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir. 1988). When considering a motion to dismiss, the Court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the Complaint. *Reynolds,* 846 F.2d at 747; *Maniere v. United States,* 31 Fed.Cl. 410, 413 (1994).

The plaintiff bears the burden of establishing the Court's jurisdiction when the issue has been raised in the context of a dispositive motion. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). *See also Sanders v. United States,* 252 F.3d 1329, 1333 (Fed.Cir.2001); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir. 1998); *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583–84 (Fed.Cir.1993), *cert. denied,* 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Reynolds,* 846 F.2d at 748; *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991). The Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); *Hamlet,* 873 F.2d at 1416.[14]

The nonmoving party bears the burden of establishing jurisdiction by a preponderance of the evidence in a dispute over subject matter jurisdiction. *Alder,* 161 F.3d at 1377; *Reynolds,* 846 F.2d at 748. *See also McNutt,* 298 U.S. at 189, 56 S.Ct. 780. Only contested facts relevant to subject matter jurisdiction must be decided by the court. *Reynolds,* 846 F.2d at 747. When considering a motion to dismiss for lack of subject matter jurisdiction, the Court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir.1998); *Rocovich,* 933 F.2d at 993; *Cedars–Sinai,* 11 F.3d at 1583–84; *Indium Corp. v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986). The Court will consider all the jurisdictional evidence presented to determine whether or not the plaintiff has satisfied his burden to show that his claim is not barred by the statute of limitations. Thus, in deciding on the defendant's motion to dismiss, the Court may look to the Complaint, subsequent motions, and the AR.

## II. Judgment upon the administrative record

A motion for judgment upon the administrative record is measured by the same standards as a motion for summary judgment. *Nickerson v. United States,* 35 Fed.Cl. 581, 588 (1996), *aff'd,* 113 F.3d 1255 (Fed.Cir. 1997) (table); RCFC 56.1. Judgment upon the administrative record is properly granted

---

14. In addition, the plaintiff's pleadings in this case deserve particular latitude because the plaintiff appears before the Court *pro se* with limited resources. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Roche v. United States Postal Serv.,* 828 F.2d 1555, 1558 (Fed.Cir.1987). *See also Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, although the plaintiff is proceeding *pro se,* he still has the burden of establishing jurisdiction. *Sanders,* 252 F.3d at 1333.

under the same standards as summary judgment when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). When both parties have moved for judgment on the record, each party's motion must be evaluated on its own merits, drawing all reasonable inferences against the party whose motion is being considered. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). In deciding a motion for judgment upon the record, as with summary judgment, the Court does not "weigh the evidence and determine the truth of the matter but [only] determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The plaintiff claims that whether or not the ABCMR's disability determination was supported by substantial evidence is a material fact in dispute, because the Board allegedly failed to consider all of the relevant evidence in his case. Sufficiency of evidence, however, is a question of law, and the matter is therefore otherwise appropriate for disposition on the defendant's motion. *See Kirwin v. United States*, 23 Cl.Ct. 497, 503 (1991). The Court finds that the plaintiff has failed to allege any new evidence that would have changed the ABCMR's prior assessments, because all of the plaintiff's essential submissions have been previously considered by the Board. Accordingly, since a "*de novo* hearing in this court would merely be an unnecessary duplication of the Correction Board's hearing, the case is ripe for disposition by summary judgment." *de Cicco v. United States*, 230 Ct.Cl. 224, 230, 677 F.2d 66, 70 (1982). *See also Strickland v. United States*, 36 Fed.Cl. 651, 655–56 (1996).

## III. The Statute of Limitations

### A. The Court's jurisdiction and the statute of limitations

The defendant in this case maintains that the plaintiff's claim for retirement disability benefits is time barred. Assuming—at the latest—that the statute began running on the date of the plaintiff's September 13, 1993 discharge, Mr. Myers did not file his Complaint in this Court until May 25, 2000, well over six years after the date he separated from the service, *i.e.*, the statute expired no later than September 13, 1999. Also, the defendant argues that the statute was not tolled, *inter alia*, by the plaintiff's voluntary recourse to the ABCMR, the PEB's decision's alleged lack of finality, equitable tolling principles or the enactment of The Defense Authorization Act For Fiscal Year 1995, Pub.L. No. 103–337, Div. A, Title VII, § 721(f), 108 Stat. 2663, 2806 (1994) (codified as an amendment at 10 U.S.C. § 1074 (1994)) (hereinafter "Pub.L. No. 103–337"). The defendant argues that since the plaintiff's claim is time barred and the statute has not otherwise been tolled, this Court lacks subject matter jurisdiction.[15]

The plaintiff counters with several alternatives. He claims that the PEB's decision lacks finality because there was never a determination, as such, of his right to a disability retirement with respect to tinnitus, Major Depressive Disorder, PTSD, or any other allegedly undiagnosed conditions. In the alternative, he contends that the statute was tolled by his recourse to the ABCMR or by equitable tolling principles, because he was misled by Army officials. Finally, he argues that the enactment of Pub.L. No. 103–337 suspended the running of the statute in relation to his allegedly undiagnosed claims, notwithstanding their accrual date.

▮▮▮ The doctrine of sovereign immunity protects the United States from suit except when Congress has consented to be sued, *Block v. North Dakota ex rel. Board of Univ. & Sch. Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), and it is well-settled law that this Court's jurisdiction is created by waivers of sovereign immunity by

---

**15.** The plaintiff is mindful of the jurisdictional issue's significance. "Petitioner is expressly aware than any claim against the United States particularly a disability retirement (*sic*) claim, must be brought within six years of the final judgement (*sic*) of the claim from a board or tribunal." Pl.'s Mot. for Disability Retirement (Complaint) at 1.

the United States through acts of Congress.[16] *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Jurisdiction does not exist in this Court absent a waiver of sovereign immunity by the United States. *Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349; *Testan,* 424 U.S. at 398, 96 S.Ct. 948. Consequently, absent congressional consent to entertain a claim against the United States, this Court lacks authority to grant relief. *Testan,* 424 U.S. at 399, 96 S.Ct. 948; *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Kanemoto v. Reno,* 41 F.3d 641, 644 (Fed.Cir.1994).

■ Moreover, a waiver of sovereign immunity by the United States cannot be implied; it must be unequivocally expressed by Congress. *Testan,* 424 U.S. at 399, 96 S.Ct. 948; *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981); *King,* 395 U.S. at 4, 89 S.Ct. 1501. Consequently, whether or not this Court has jurisdiction depends upon the extent to which the United States has waived its sovereign immunity. *Testan,* 424 U.S. at 399, 96 S.Ct. 948 (citing *Sherwood,* 312 U.S. at 586, 61 S.Ct. 767). Any statute that creates a waiver of sovereign immunity must be strictly construed in favor of the Government. *See Sherwood,* 312 U.S. at 590, 61 S.Ct. 767.

■ The Tucker Act, 28 U.S.C. § 1491 (1994), defines the jurisdiction of the United States Court of Federal Claims, but it " 'does

not create any substantive right enforceable against the United States for money damages.' " *Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349 (quoting *Testan,* 424 U.S. at 398, 96 S.Ct. 948). The Act confers jurisdiction upon the Court only when a substantive right exists. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967). Individual claimants must look, therefore, beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

Although the plaintiff's submissions do not state the specific statutory or regulatory provisions upon which he relies, the Court will assume that the plaintiff claims a right to past and current retirement disability benefits that is properly premised on 10 U.S.C. § 1201 (1994 & Supp. V 1999), which is "money-mandating" [17] *See Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir.1991); *Rice v. United States,* 31 Fed.Cl. 156, 164–65 (1994); *Asbury v. United States,* 30 Fed.Cl. 417, 419 (1994).

■ Suits against the United States, however, are generally subject to a six-year statute of limitations after the claim first accrues. 28 U.S.C. § 2501 (2000) ("Section 2501"); [18] *Alder,* 161 F.3d at 1376. *See also Kirby v. United States,* 201 Ct.Cl. 527, 532–33, 1973 WL 21341 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). This requirement is one of the terms and conditions upon which the United States has waived its sovereign immunity and consented to suit. *See Soriano v. United States,*

---

**16.** *See generally* 28 U.S.C. § 1491 (1994).

**17.** The Secretary of each military service is authorized to make a final determination on a service member's entitlement to disability benefits. *See generally* 10 U.S.C. §§ 1201–21 (1994 & Supp. V 1999).

**18.** 28 U.S.C. § 2501 (1994) provides in relevant part that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. * * * A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases."

Although not raised directly by the plaintiff, his PTSD or Major Depressive Disorder could poten-

tially toll the statute of limitations if these disabling conditions were so severe as to constitute a continuous legal disability. To prevail on such a claim, however, the plaintiff's impediment "should require a mental derangement precluding a person from comprehending rights which he would be otherwise bound to understand." *Goewey v. United States,* 222 Ct.Cl. 104, 114, 612 F.2d 539, 545 (1979). The burden of proving mental incapacity is on the plaintiff, and he has made no such showing. In addition, the AR does not support a continuous legal disability finding. *See generally Bond v. U.S.,* 43 Fed.Cl. 346, 349 (1999); *Bennett v. United States,* 36 Fed.Cl. 111, 112–13 (1996); *Ellis v. United States,* 1 Cl.Ct. 141, 143 (1983).

352 U.S. 270, 273–74, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Bath Iron Works v. United States,* 20 F.3d 1567, 1572 (Fed.Cir.1994); *Hart v. United States,* 910 F.2d 815, 817–18 (Fed.Cir.1990); *Coon v. United States,* 30 Fed.Cl. 531, 534, *aff'd,* 41 F.3d 1520 (Fed.Cir. 1994) (table) ("Compliance with the statute of limitations, in this court, is an explicit *jurisdictional prerequisite* for the commencement of suit.").

Moreover, Section 2501 is jurisdictional and must be strictly construed.[19] *See Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir. 1988); *Hart,* 910 F.2d at 817; *Kirby,* 201 Ct.Cl. at 539, 1973 WL 21341; *Jones v. United States,* 801 F.2d 1334, 1335 (Fed.Cir.1986), *cert. denied,* 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987). Neither this Court nor the parties may waive the statute of limitations because it is an express limitation on the Tucker Act's waiver of sovereign immunity and prescribes this Court's subject matter jurisdiction and power. *Hart,* 910 F.2d at 817 (citing *Soriano,* 352 U.S. at 273–74, 77 S.Ct. 269). *See also United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Caguas Cent. Fed. Sav. Bank v. United States,* 215 F.3d 1304, 1310 (Fed.Cir.2000), *cert. denied,* 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001); *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1454 (Fed.Cir. 1997); *Alder,* 161 F.3d at 1376–77.

When ruling on a motion to dismiss based upon the statute of limitations, the Court must focus on the issue of "first accrual," *i.e.,* the point at which all events transpired "entitling the claimant to demand payment and sue here for his money." *Nager Elec. Co. v. United States,* 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966). *See also Hart,* 910 F.2d at 817 (citing *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988)) (quoting *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964)); *Japanese War Notes*

*Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 632, 373 F.2d 356, 358 (1967).

**B. Claim accrual and the "All Events Test"**

For purposes of Section 2501, "a cause of action against the government has 'first accrued' only when *all the events* which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland,* 855 F.2d at 1577 (citing *Kinsey,* 852 F.2d at 557 n*) (emphasis added). *See also Brighton Village Assocs. v. United States,* 52 F.3d 1056, 1060 (Fed.Cir.1995). In other words, a claim accrues, and the statute of limitations begins to run, when the underlying facts of a claim become known or knowable to the plaintiff. *Kubrick,* 444 U.S. at 123, 100 S.Ct. 352; *Menominee Tribe of Indians v. United States,* 726 F.2d 718, 720–21 (Fed.Cir.1984), *cert. denied,* 469 U.S. 826, 105 S.Ct. 106, 83 L.Ed.2d 50 (1984). "Stated differently, a claim has accrued when the last event transpires that gives plaintiff a cause of action." *Adams,* 46 Fed.Cl. at 838.

It is well settled that a cause of action for a military pay disability benefit case does not accrue until the service member seeks, and is denied, disability benefits from the first military board competent to grant such benefits. *Real v. U.S.,* 906 F.2d 1557, 1560 (Fed.Cir.1990) (citing *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied sub nom. Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963)); *Brownfield v. United States,* 218 Ct.Cl. 477, 482, 589 F.2d 1035, 1037 (1978) ("In disability retirement cases the claim accrues 'on final action of a board competent to pass on eligibility for disability retirement.'") (citations omitted); *Collins v. United States,* 47 Fed.Cl. 196, 199–200, *aff'd,* 243 F.3d 561 (Fed.Cir.2000) (table); *Knowles v. United States,* 43 Fed.Cl. 515, 518 (1999);

---

19. In addition, the six-year time bar on actions against the United States is "a jurisdictional limitation rather than simply * * * an affirmative defense," and as a result, it functions as a "jurisdictional requirement attached by Congress as a condition on the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland,* 855 F.2d at 1576–77. *See also Laughlin v. United States,* 22 Cl.Ct. 85, 99 (1990), *aff'd,* 975 F.2d 869 (Fed.Cir.1992) (table); *Adams v. United States,* 46 Fed.Cl. 834, 838 (2000); *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994).

*Aubre v. United States,* 40 Fed.Cl. 371, 376 (1998); *Colon v. United States,* 35 Fed.Cl. 515, 518 (1996); *Asbury v. United States,* 30 Fed.Cl. at 419.

 A Physical Evaluation Board is an appropriate board to make a final disability determination, and its decision is adequate to trigger the running of the statute of limitations.[20] *Real,* 906 F.2d at 1560 ("If at the time of discharge an appropriate board * * * heard the service member's claim but denied it, the limitations period begins to run upon discharge."); *Aubre,* 40 Fed.Cl. at 376, n. 6; *Colon,* 35 Fed.Cl. at 518; *Fuller v. United States,* 14 Cl.Ct. 542, 544 (1988) ("The PEB is a proper and competent tribunal whose decision is adequate to trigger the running of the statute of limitations."); *Steiner v. United States,* 9 Cl.Ct. 307, 310; *Bruno v. United States,* 214 Ct.Cl. 383, 386–88, 556 F.2d 1104, 1105–06 (1977). In this case, the ABCMR acted as a reviewing board and not as the first board to consider the plaintiff's eligibility for a disability retirement.

 Once a plaintiff is on notice of a possible cause of action, the statute of limitations period is triggered, and it is not tolled while a plaintiff pursues permissive administrative remedies, such as an optional appeal to a military records correction board.[21] *Hurick v. Lehman,* 782 F.2d 984, 987 (Fed. Cir.1986) ("[T]he Court of Claims * * * has held that resort to a Correction Board is permissive (rather than a mandatory) step, which does not suspend the running of the statute [of limitations]."). *See also Heisig v. United States,* 719 F.2d 1153, 1155 (Fed.Cir. 1983);[22] *Friedman,* 159 Ct.Cl. at 25, 310 F.2d at 396; *Bruno,* 214 Ct.Cl. at 386, 556 F.2d at 1106 ("Post-discharge remedies, such as the Board [for the] Correction of Military

Records, are permissive in nature and do not serve to toll the running of the statute of limitations."); *Chandler v. United States,* 47 Fed.Cl. 106, 113 (2000); *Colon,* 35 Fed.Cl. at 518; *Collins v. United States,* 14 Cl.Ct. 746, 752, *aff'd,* 865 F.2d 269 (Fed.Cir.1988) (table), *cert. denied,* 492 U.S. 909, 109 S.Ct. 3222, 106 L.Ed.2d 572 (1989); *Steiner,* 9 Cl.Ct. at 310; *Mathis v. United States,* 183 Ct.Cl. 145, 147–48, 391 F.2d 938, 939 (1968), *aff'd on reh'g,* 190 Ct.Cl. 925, 421 F.2d 703 (1970). The plaintiff's optional ABCMR appeals had no effect upon the statutory time bar. *Hurick,* 782 F.2d at 987; *Ellis,* 1 Cl.Ct. at 143–44.

## C. Tolling the statute of limitations

The plaintiff, citing *Friedman,* 159 Ct.Cl. at 24, 310 F.2d at 396, claims that the PEB's decision lacks finality because his claim did not actually accrue in relation to his tinnitus, PTSD, and Major Depressive Disorder until the PEB made a final administrative determination regarding them. He asserts that since the PEB did not consider these conditions, as well as his other allegedly undiagnosed illnesses, the statute was never triggered in relation to them.[23]

The defendant counters that the record plainly reflects that the ABCMR was aware that the plaintiff had been examined by a specialist for audiological concerns in 1993, but that his medical records contained no contemporaneous diagnosis for tinnitus. The Board was also clearly aware that, notwithstanding the plaintiff's emotional and anxiety issues, he was never actually clinically diagnosed with PTSD, or any similar conditions, such as a Major Depressive Disorder, *before* he was discharged. The additional unfitting conditions, which the plaintiff complains of, were identifiable, subject to diagnosis, and

**20.** *See Aubre,* 40 Fed.Cl. at 376, n. 6 ("In most cases the proper board will be a physical evaluation board ('PEB') that evaluates a disability claim prior to separation from the armed forces. However, if the claimant is not reviewed by a PEB, a correction board's final decision indicates the date on which a claim accrues.") (citing *Real,* 906 F.2d at 1560).

**21.** A PEB decided Mr. Myers' case on August 11, 1993, but he was not actually discharged until September 13, 1993. He filed his claim in this Court on May 25, 2000.

**22.** "It is settled law that claims for military pay and allowances are actionable under the Tucker Act; although relief has usually been first sought from military correction boards since their creation in 1946, there is here no requirement of exhaustion of administrative remedies prior to pursuit of judicial review." *Heisig,* 719 F.2d at 1155.

**23.** Pl.'s Mot. for Disability Retirement (Complaint) at 2; Pl.'s Mot. for J. Upon the AR at 19.

ratable if present. As the ABCMR explained in its reconsideration, "[a]t the time of the MEB/PEB the applicant had physical ailments which included or were exacerbated by emotional/psychological factors that were noted at the time. The fact that his MEB doctors acknowledged these factors does not demonstrate that he had PTSD." AR at 291.

The record reflects that the ABCMR conducted a thorough, retroactive merits review of the plaintiff's complaints and symptoms as reflected in the record before it, but that it ultimately determined that these additional symptoms/complaints never rose to the level of ratable "unfitting" conditions as the plaintiff's PEB had previously concluded. The plaintiff did have a final administrative determination with regard to these additional allegedly unfitting conditions, and the ABCMR upheld the prior decision of the PEB based upon substantial evidence not just once—but twice.[24]

The plaintiff also argues that he was misled, because he claims that he was mistakenly told during counseling that only two of his diagnoses were ratable. He maintains that because he allegedly received this incorrect information, he mistakenly concurred with the findings of his PEB, asserting that the statute should be equitably tolled.[25]

The six-year statute of limitations is strictly construed, however, subject to limited equitable exceptions. Federal courts invoke the doctrine of equitable tolling to allow a party, under certain circumstances, to maintain an action despite the fact that a statutory time limit has elapsed, but apply this doctrine sparingly. In *Irwin v. Dept. of Veterans Affairs*, the United States Supreme Court sanctioned equitable tolling where: (1) "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period,"[26] or (2) "where the complainant has been induced or tricked

by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (footnotes omitted). *See also Collins*, 14 Cl.Ct. at 751–52. Moreover, it is the plaintiff's burden to prove the existence of any qualifying exceptions, and he has not done so. *Callahan v. United States*, 49 Fed.Cl. 555, 558 (2001).

Mr. Myers has failed to cite to any credible evidence of record, absent his own uncorroborated assertions, that demonstrates that Army officials fraudulently concealed facts or induced his waiver. Any allegations of overt or covert efforts on the part of the Army to deny Mr. Myers a mental health evaluation, to conceal relevant facts, or to trick or mislead him are not supported by the record. In fact, the supplemental letters from Dr. Squire and Dr. Radford indicate quite to the contrary.

Moreover, for almost two months prior to his MEB, Mr. Myers was a nominal outpatient at WRAMC. If he had requested a mental health examination at any time during his disability evaluation, nothing in the record suggests that it would have been denied. In addition, the record reflects that the plaintiff knew and understood the reasons and conditions surrounding his disability separation and that he had adequate notice of potential claims and issues when he was released from the Army. *Hopland*, 855 F.2d at 1577–78; *Ellis*, 1 Cl.Ct. at 143. Given the nominal evidence proffered by Mr. Myers, the plaintiff has not demonstrated any Army misconduct. Accordingly, the Court finds no basis to toll the statute equitably on these grounds.

**D. Pub.L. No. 103–337 as tolling the statute of limitations**

In addition, the plaintiff argues that an intervening statute, Pub.L. No. 103–337,

---

**24.** Although the ABCMR evaluated the plaintiff's additional supplemental evidence when it reviewed the plaintiff's prior PEB decision to determine if it would be necessary to correct any alleged errors or to remove an injustice, the Board's review did not create a new statute of limitations period. *See Robinson v. United States*, 163 Ct.Cl. 235, 237, 1963 WL 8567 (1963); *Bruno*, 214 Ct.Cl. at 386–87, 556 F.2d at

1106; *Friedman*, 159 Ct.Cl. at 25, 310 F.2d at 396.

**25.** Pl.'s Mot. for Disability Retirement (Complaint) at 7.

**26.** The plaintiff, in this case, did not file any pleadings with the Court during the statutory period.

reopens his claim, thereby tolling the statute of limitations and depriving his prior PEB decision of any presumed finality. Under new statutorily-based criteria for evaluating chronic, undiagnosed Gulf War illnesses, the plaintiff claims that he is also entitled to a disability rating for rashes, headaches, and diarrhea, because his doctors were allegedly unable to find a cause for these ailments. He contends that the statute requires that the Army review the facts of his case again to determine if these disabilities should be rerated in light of new information about Persian Gulf War Syndrome ("GWS").[27]

The defendant counters, however, that the plaintiff does not fall within the ambit of this statute as implemented, because all of the allegedly undiagnosed conditions that he complains of were either clinically diagnosed by the PEB or never rose to the level of a disability. The defendant maintains that any purported waivers of sovereign immunity must be strictly construed and that the statute as promulgated does not negate the finality of the PEB's decision.

Pursuant to 38 C.F.R. § 3.317 (2000),[28] the regulation implementing 10 U.S.C. § 1074 (1994) as amended, the VA is required to compensate Gulf War veterans who exhibit objective indications of chronic disability resulting from an undiagnosed illness, or a combination of illnesses, that is manifested by one or more signs or symptoms listed in 38 C.F.R. § 3.317(b) (2000).[29] See also 38 U.S.C. § 1117 (1994 & Supp. V 1999). In order to demonstrate a chronic disability due to an undiagnosed illness under GWS criteria, however, it is necessary to satisfy two preconditions. First, the disability must have become manifest while the member was on active military service in the Southwest Asia theater of operations during the Persian Gulf War or to a degree of 10 percent or more not later than December 31, 2001. Second, any such disability, by history, physical examination, and laboratory tests, cannot be attributed to any known clinical diagnosis. 38 C.F.R. § 3.317(a)(1)(i)–(ii) (2000).

Under 38 C.F.R. § 3.317, the VA is authorized to pay compensation benefits for disabilities that are caused by an illness that cannot be diagnosed, i.e., a chronic illness that has existed for six months or more and that cannot be identified. In other words, the VA's focus is on chronic undiagnosed illnesses.[30]

"(a)(1) Except as provided in paragraph (c) of this section, VA shall pay compensation in accordance with chapter 11 of title 38, United States Code, to a Persian Gulf War veteran who exhibits objective indications of chronic disability result from an illness or combination of illnesses manifested by one or more signs or symptoms such as those listed in paragraph (b) of this section, provided that such disability:

"(i) Became manifest either during active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2001; and

"(ii) By history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis."

---

27. Pl.'s Mot. for Disability Retirement (Complaint) at 1–2. The Defense Authorization Act For Fiscal Year 1995, Pub.L. No. 103–337, Div. A, Title VII, § 721(f), 108 Stat. 2663, 2806 (1994) (codified as an amendment at 10 U.S.C. § 1074 (1994)), provides in relevant part:

"(f) REVIEW OF RECORDS AND RERATING OF PREVIOUSLY DISCHARGED GULF WAR VETERANS.—(1) The Secretary of Defense, in consultation with the Secretary of Veterans Affairs, shall ensure that a review is made of the health and personnel records of each Persian Gulf veteran who before the date of the date of the enactment of this Act [Oct. 5, 1994] was discharged from active duty, or was medically retired, as a result of a Physical Evaluation Board process.

"(2) The review under paragraph (1) shall be carried out to ensure that former Persian Gulf veterans who may have been suffering from a Persian Gulf-related illness at the time of discharge or retirement from active duty as a result of the Physical Evaluation Board process are revaluated (sic) in accordance with the criteria established under subsection (e)(1) and, if appropriate, are rerated."

28. 38 C.F.R. § 3.317(a)(1) (2000) provides in relevant part:

"**Compensation for certain disabilities due to undiagnosed illnesses.**

29. These signs or symptoms are: fatigue, signs or symptoms involving the skin, headache, muscle pain, joint pain, neurologic signs or symptoms, signs or symptoms involving the respiratory system (upper or lower), sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, or menstrual disorders.

30. The Army had previously awarded the plaintiff a 20 percent disability rating for his severe chronic angioedema urticaria (a known, clinical-

The VA initially awarded the plaintiff a 20 percent VA disability rating for his angioedema urticaria.[31] After his case was subsequently reevaluated by the VA, he received an additional 10 percent for PTSD claimed as a nervous condition, plus another 10 percent for tinnitus. However, he received zero percent for his allergic rhinitis, degenerative joint disease, and residuals of meningitis, and the VA denied a service connection and any commensurate disability rating for his diarrhea and headaches, due to a lack of evidence in the VA claims file. Moreover, the VA also failed to list any unknown, undiagnosed conditions for the plaintiff when it rerated him on February 28, 2000. AR at 316–21. *See also* AR 121–23.

The plaintiff's purportedly undiagnosed illnesses were, in fact, either clinically identified or diagnosed by the PEB (such as his severe rashes), or they never rose to the level of a ratable disability, *e.g.*, his headaches and diarrhea. These conditions were *not* chronic diseases that failed to fit any known medical illness, and the record suggests that they might have been the unfortunate, collateral side effects of other previously diagnosed causes and conditions, such as his angioedema urticaria or the residual effects of multiple meningitis attacks. Even at this late date, the record still does not support the plaintiff's contentions that he had any unfitting, undiagnosed illnesses within

the purview of 38 C.F.R. § 3.317 (2000). Accordingly, the plaintiff cannot claim that the PEB was deprived of finality when his case was not reopened, *i.e.*, any purported waiver of sovereign immunity must be strictly construed. *Hopland*, 855 F.2d at 1577; *Hart*, 910 F.2d at 817.

Accordingly, the defendant's motion to dismiss for lack of subject matter jurisdiction is granted, because the plaintiff's claim is time barred under Section 2501.

## IV. The Merits

Notwithstanding the above discussion and assuming that the Court were to find jurisdiction to entertain the plaintiff's claim, the defendant would still be entitled to judgment on the AR.

### A. Standard of review in military pay disability retirement cases

■ The standard of review for military pay disability retirement claims is well settled in this Court. As a general rule with regard to the review of disability retirement cases, the Court is limited to determining whether or not a decision of the correction board is arbitrary, capricious, unsupported by substantial evidence, or is contrary to applicable statutes and regulations. *Heisig*, 719 F.2d at 1156.[32] *See also Porter v. United*

---

ly diagnosed illness) and a zero percent rating for his tinnitus. The plaintiff was never diagnosed with PTSD by the Army, and there were no specific findings of any other illnesses, either diagnosed or undiagnosed, except for the plaintiff's chronic rhinitis which was not rated. AR at 182.

PTSD, however, was a known illness subject to objective clinical diagnosis in 1991. "[E]ven though PTSD had not been 'given a diagnostic name until 1980 … its symptoms … would have been overt and noticeable had they been so inhibiting as to affect [plaintiff's] fitness for duty.'" *Aubre*, 40 Fed.Cl. at 379 n. 10 (quoting *Kirwin*, 23 Cl.Ct. at 507 n. 13). As detailed subsequently in Section IV, the ABCMR failed to find—as in *Kirwin*—any objective "unfitting" evidence in the record that Mr. Myers suffered from PTSD prior to his discharge; *i.e.*, extremely "uncharacteristic" behavior indicating that he might be unfit for further military service.

31. "The service medical records are quite clear that veteran began suffering from angioedema urticaria from August of 1990 while involved .

with Desert Storm. For the entire period of the veteran's service there were constant complaints and constant findings of skins weals." AR at 122. *See also* AR at 313.

32. The Court of Appeals for the Federal Circuit also noted in *Heisig* that this standard is broadly referred to as the "'substantial evidence' rule," perhaps because in the hundreds of statements of the applicable standard, not all of which have included every element summarized above, the element of 'substantial evidence' is least (and perhaps never) omitted." *Id.* at 1156. Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). When employing the substantial evidence standard, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although

*States,* 163 F.3d 1304, 1312 (Fed.Cir.1998) (citing *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824 (1979)); *Rose v. United States,* 35 Fed.Cl. 510, 512 (1996); *Kirwin,* 23 Cl.Ct. at 503; *Dzialo v. United States,* 5 Cl.Ct. 554, 561 (1984); *Parthemore v. United States,* 1 Cl.Ct. 199, 201–02 (1982).

It is important to note at the outset that "it is not the province of this court to factually determine, *ab initio,* whether plaintiff was unfit for military service at the time of his release." [33] *Dzialo,* 5 Cl.Ct. at 561 (citing *de Cicco,* 230 Ct.Cl. at 228–29, 677 F.2d at 70). *See also Ferrell v. United States,* 23 Cl.Ct. 562, 568 (1991); *Pope v. United States,* 15 Cl.Ct. 218, 222–23 (1988). In addition, the Court does not review a military action in the first instance when a plaintiff has previously challenged the action before a military correction board:

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by

substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

*Sanders,* 219 Ct.Cl. at 298, 594 F.2d at 811. *See also Porter,* 163 F.3d at 1312; *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986). Determining who is fit or unfit to serve in the armed forces is not a function of the judiciary,[34] *Heisig,* 719 F.2d at 1156, and when reasonable minds could reach differing conclusions, the Court will not substitute its judgment for that of the ABCMR.[35] *Sanders,* 219 Ct.Cl. 285, 594 F.2d at 814. *See also Murphy v. United States,* 993 F.2d 871, 874 (Fed.Cir.1993).

Consequently, the Court's role, in cases such as this, is limited to reviewing the record below to determine whether or not the ABCMR's decision was arbitrary or capricious, unsupported by substantial evidence, or contrary to law by which a complainant has been severely prejudiced and money is due.[36] *Sanders,* 219 Ct.Cl. at 298, 594 F.2d

this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (citations omitted). *See also Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Jennings v. Merit Sys. Protection Bd.,* 59 F.3d 159, 160 (Fed.Cir. 1995).

**33.** A service member who incurs a disability on active duty is not entitled to a disability retirement unless the disability renders the service member unfit to perform his or her military duties. 10 U.S.C. § 1201 (1994 & Supp. V 1999). In *Johnston v. United States,* 157 Ct.Cl. 474, 478, 1962 WL 9299 (1962), the court underscored the importance of determining fitness for duty at the time of the member's release:

"The issue before us is whether the Secretary's decision that plaintiff was physically fit to perform duties commensurate with his rank and office at the time of his release from service was so arbitrary and capricious as to constitute a violation of his legislative mandate. In order to establish that the Secretary's action was so arbitrary and capricious, plaintiff must discharge a very substantial burden of proof." *Id. See also Robbins v. United States,* 29 Fed.Cl. 717, 725 (1993).

**34.** The Court is mindful that "[j]udicial deference must be 'at its apogee' in matters pertaining to

the military and national defense." *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).

**35.** "Decisions regarding entitlement to disability retirement are not considered de novo by this court. The agency action, in this case embodied in the decision of the ABCMR, is given deference. The role of the court is not to determine whether in fact the service person's unfitness, if any, at the time of release was service-connected, but whether the board's determination that it was not is contrary to law." *Patterson v. United States,* 44 Fed.Cl. 468, 471 (1999), *aff'd,* 250 F.3d 757 (Fed.Cir.2000) (table), *cert. denied,* 531 U.S. 1070, 121 S.Ct. 758, 148 L.Ed.2d 660 (2001).

**36.** "It takes more than an unfair rating or simple injustice to merit our consideration or judicial relief. It must be an unlawful act made so by violation of statute, or regulation, or published mandatory procedure, or unauthorized act, or so unsupported by the evidence as to be a gross injustice, unlawful because of clear legal or factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith or fraud, and seriously prejudicial." *Skinner,* 219 Ct.Cl. at 333, 594 F.2d at 830. "This court does not sit as a super correction board." *Harris v. United States,* 14 Cl.Ct. 84, 89 (1987), *aff'd,* 861 F.2d 729 (Fed.Cir.1988) (table).

at 811; *Wronke,* 787 F.2d at 1576; *Heisig,* 719 F.2d at 1156; *Arens v. United States,* 969 F.2d 1034, 1037 (Fed.Cir.), *reh'g denied* (1992); *de Cicco,* 230 Ct.Cl. at 233, 677 F.2d at 72.

As the United States Court of Appeals for the Federal Circuit amplified in *Heisig,* "the standard of review does not require a re-weighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence * * * Under the substantial evidence rule, *all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion." *Heisig,* 719 F.2d at 1157 (footnote omitted).[37]

▮ This Court, under the applicable standard of review, is not allowed to reweigh the evidence that the ABCMR considered in reaching its decision; rather, the Court's function is to determine whether or not the ABCMR's conclusion was supported by substantial evidence. *Id.; Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985) ("Judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm."); *Robbins,* 29 Fed.Cl. at 725; *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 814. Although this standard of review is admittedly a narrow one, " '[t]he court is not empowered to substitute its judgment for that of the [ABCMR].' " *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (quoting *Citizens,* 401 U.S. at 416, 91 S.Ct. 814).

▮ The burden on the plaintiff is a heavy one. *Grieg v. United States,* 226 Ct.

Cl. 258, 269, 640 F.2d 1261, 1268 (1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982) (quoting *Cooper v. United States,* 203 Ct.Cl. 300, 304–05, 1973 WL 21358 (1973)); *Skinner,* 219 Ct.Cl. at 332–33, 594 F.2d at 830–31. A service member is bound by the decision of a correction board unless he or she "can demonstrate by 'cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence.' " *Dodson v. United States,* 988 F.2d 1199, 1204–05 (Fed.Cir.), *reh'g denied* (1993) (citation omitted).[38] *See also Porter,* 163 F.3d at 1312; *Arens,* 969 F.2d at 1037; *Wronke,* 787 F.2d at 1576; *Chayra,* 23 Cl.Ct. at 178; *de Cicco,* 230 Ct.Cl. at 233, 677 F.2d at 72; *Finn v. United States,* 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977) (quoting *Stephens v. United States,* 174 Ct.Cl. 365, 371–72, 358 F.2d 951, 954 (1966)).

Moreover, in challenging an ABCMR action, the plaintiff must also "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Doe v. United States,* 132 F.3d 1430, 1434 (Fed.Cir.1997) (citing *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813). *See also Robbins,* 29 Fed.Cl. at 726; *Chayra,* 23 Cl.Ct. at 178; *Fluellen v. United States,* 44 Fed.Cl. 97, 101 (1999). Even if the plaintiff can demonstrate the presence of a material legal error in the ABCMR's decision, the member must also show a nexus between that error and being discharged without the disability retirement benefits claimed. *See Hary v. United States,* 223

---

**37.** "[T]he Court of Federal Claims is not to supplant the judgment of the [Board] with its own, but merely ascertains whether the [Board's] decision is supported by substantial evidence." *Aubre,* 40 Fed.Cl. at 378 (citation omitted). *See also West v. United States,* 35 Fed.Cl. 226, 231 (1996) (" '[W]hile we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions.' ") (quoting *Sanders,* 219 Ct.Cl. 285, 594 F.2d at 814); *Chayra v. United States,* 23 Cl.Ct. 172, 178 (1991). Moreover, as *Kirwin,* 23 Cl.Ct. at 505, sagely observed, "[t]he field of medical diagnosis is perhaps a

paradigm example of an area in which reasonable minds can differ."

**38.** The Federal Circuit also noted in *Dodson* that: "The boards may also be reviewed for failure to correct an alleged injustice where factual, rather than legal, error has been committed by the military and the error is so shocking to the conscience that boards' failure to correct it rises to the level of legal error." *Dodson,* 988 F.2d at 1204 n. 6. *See also Doe,* 132 F.3d at 1433–34; *Arens,* 969 F.2d at 1037; *Wronke,* 787 F.2d at 1576; *Krauss v. United States,* 40 Fed.Cl. 834, 838 (1998), *aff'd,* 185 F.3d 886 (Fed.Cir.1999) (table).

Ct.Cl. 10, 15–16, 618 F.2d 704, 706 (1980). An alleged error or injustice is reversible only if it is substantial and prejudicial to the plaintiff. *Sanders,* 219 Ct.Cl. at 298, 594 F.2d at 811.

### B. The Army's Physical Disability Evaluation Process

Army Regulation 635–40 (hereinafter "AR 635–40") prescribes the evaluation procedures for determining the physical fitness of soldiers who might be potentially unfit to perform their military duties because of a physical disability.[39] The plaintiff asserts that the Secretary's decision to separate him from active duty under the provisions of 10 U.S.C. § 1203 (1994 & Supp. V 1999), as opposed to granting him a disability retirement under 10 U.S.C. § 1201 (1994 & Supp. V 1999), was arbitrary, capricious, and not supported by substantial evidence.[40] The defendant disagrees and argues that the ABCMR's decision should be affirmed be-

cause the ABCMR thoroughly reviewed the plaintiff's case not just once—but twice—and both decisions were based upon substantial evidence.

The United States Army physical disability system is a multitiered system of review that is completely separate and apart from the VA's disability process.[41] The Army's disability evaluation process basically commences with a review of the service member by a Medical Evaluation Board ("MEB"). AR 635–40, ¶¶ 4–9, 4–10. The MEB's primary responsibility is to diagnose and describe medical conditions. If the MEB determines that a soldier does not or may not meet retention standards,[42] the case is referred to a Physical Evaluation Board ("PEB") for a fitness determination.[43] *Id.,* ¶ 4–13.

The PEB is a fact-finding board consisting of a field grade officer, a physician, and a field grade personnel officer. *Id.,* ¶ 4–17(b). The primary responsibilities of the PEB are

**39.** *See* App. to Def.'s Mot. for J. Upon the AR at 1. This regulation, entitled "Physical Evaluation for Retention, Retirement, or Separation," effective September 15, 1990, specifically incorporates applicable provisions of the Department of Veterans Affairs Schedule for Rating Disabilities ("VASRD") as a part of the Army's disability evaluation process, as modified. AR 635–40, ¶ 4–19(i). For more comprehensive procedural overviews, see generally *Robbins,* 29 Fed.Cl. at 719–20; *Slesinski v. United States,* 34 Fed.Cl. 159, 162–63 (1995).

However, not all of the general policy provisions set forth in the VASRD apply to the Army. *See* AR 635–40, ¶ 4–19(i). The Army rates *only* conditions determined to impact adversely a soldier's ability to perform his or her assigned duties. Id., ¶ 3–1(c). The VA, on the other hand, can rate basically any service-connected impairment in order to compensate the individual for loss of civilian employability or social functioning. *See* AR 635–40, App. C–13.

**40.** According to 10 U.S.C. § 1203 (1994 & Supp. V 1999), a service member is entitled to disability benefits if the member is unfit to perform his or her duties because of a physical disability incurred while entitled to basic pay. Soldiers who do not have 20 years of creditable service for retirement and who are awarded less than a 30 percent disability rating are separated with severance pay in lieu of retirement under 10 U.S.C. § 1203 (1994 & Supp. V 1999).

**41.** The Army and VA disability ratings may not necessarily be the same for a veteran, because they are determined in different ways. Army

disability benefits are compensation for the military career interruption resulting from a disability or disease, rendering the individual unfit to perform his or her duties. 10 U.S.C. § 1201 (1994 & Supp. V 1999); *Bennett v. United States,* 200 Ct.Cl. 635, 643–45, 1973 WL 21335 (1973). VA benefits, on the other hand, are based upon the impairment of civilian employment capacity resulting from a service-connected or aggravated disease or injury. *See generally* 38 U.S.C. §§ 1110, 1155; AR 635–40, App. C–13; *Bennett,* 200 Ct.Cl. at 644, 1973 WL 21335.

Thus, while the ABCMR does consider VA disability ratings as relevant evidence during its deliberations, it is not bound by them, and these ratings are "in no way ultimately determinative of claims for military disability retirement. * * * The [VA] does not determine fitness for military duty, which is the responsibility of the Secretary and military authorities." *Hinkle v. United States,* 229 Ct.Cl. 801, 805, 1982 WL 26543 (1982). *See also Kirwin,* 23 Cl.Ct. at 507; *Champagne v. United States,* 35 Fed.Cl. 198, 212 (1996), *aff'd,* 136 F.3d 1300 (Fed.Cir.1998).

**42.** Army Regulation 40–501, entitled "Standards of Military Fitness," effective June 14, 1989, ch. 3, prescribes the retention standards that the Army MEB's apply. *See* App. to Def.'s Mot. for J. Upon the AR at 116–24.

**43.** MEB's make medical determinations only; they do not make decisions regarding a service member's fitness for duty. AR 635–40, ¶¶ 4–12; 4–13(a); 4–17; 4–19.

to: (1) investigate the nature, cause, degree of severity, and probable permanency of the disability of service members; (2) evaluate the physical condition of the members against the physical requirements of their particular grades, ranks, or ratings; (3) provide a full and fair hearing for the member concerned; and (4) make findings and recommendations required by law to establish the eligibility of a member for disability retirement or separation. AR 635–40, ¶ 4–17. If a PEB determines that a soldier is no longer fit for duty and finds that the soldier is eligible for disability benefits, the PEB will rate the extent of the soldier's disability. *Id.*, ¶ 4–19(d), (f).

Initially, an informal PEB is convened to review a service member's case, and will make its determinations based strictly on the soldier's medical and personnel records. *Id.*, ¶ 4–20. However, if a service member disagrees with the conclusions of the informal PEB, the soldier can subsequently demand a formal PEB, with or without a personal appearance, in which the soldier can present evidence in support of his or her case. *Id.*, ¶¶ 4–20(c), 4–21(a), (g).

The PEB evaluates a soldier's physical fitness in light of the demands made upon the member based upon the rank, type of tasks and duties the individual is required to perform. A soldier, for example, might fail to meet Army retention standards because he or she is suffering from a disabling illness or injury, yet still be fit for duty because the soldier is still capable of performing the tasks and duties of his or her particular job.[44] As noted previously, the PEB's determination as to the service member's fitness for duty is not a purely medical judgment, unlike the evaluation of the MEB. The PEB only rates soldiers for conditions that do not meet medical retention standards and which make the soldier unfit for duty. *Id.*, ¶¶ 3–1, 4–19(d). After the PEB announces its finding, if the soldier disagrees with the formal PEB's recommendations, the soldier can invoke additional administrative appellate rights which are not presently at issue. *See generally id.*, ¶¶ 4–21, 4–22. If a soldier is still unsatisfied after exhausting his or her administrative appellate rights under AR 635–40, the soldier can appeal to the ABCMR[45] or ultimately bring suit in the United States Court of Federal Claims for relief.[46]

## C. Contentions of the Parties

The basic issue that the Court must address here is whether or not to uphold the ABCMR's decision which determined that the plaintiff was not unfit for military service as a result of tinnitus, a Major Depressive Disorder, PTSD, or any other allegedly disabling conditions at the time of his release from active duty. Specifically, the plaintiff claims that although he was awarded a 20 percent disability rating by the Army for his severe chronic urticaria and angioedema in 1993, he was not rated for any other allegedly disabling diagnosed or undiagnosed conditions because the Army did not properly evaluate him, and the Board either ignored or failed to consider relevant evidence. As a result, the plaintiff complains that the Army improperly discharged him with only severance pay under 10 U.S.C. § 1203 (1994 & Supp. V 1999) rather than with retired pay, which he now seeks under 10 U.S.C. § 1201 (1994 & Supp. V 1999). The plaintiff was given a 20 percent rating rather than a 30 percent or higher rating, which would have given him a permanent disability retirement pension rather than a lump-sum severance

---

**44.** "The mere presences of an impairment does not, of itself, justify a finding of unfitness because of physical disability. In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the soldier reasonably may be expected to perform because of his or her office, grade, rank or rating." AR 635–40, ¶ 3–1, App. to Def.'s Mot. for J. Upon the AR at 9.

**45.** *See* 10 U.S.C. § 1552 (1994); 32 C.F.R. § 581.3 (2000).

**46.** The Court has Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1) (1994), in conjunction with 10 U.S.C. §§ 1201 *et seq.* (1994 & Supp. V 1999), over military disability pay claims. *See Sawyer*, 930 F.2d at 1580. The Court may order the correction of military records, if the order is "an incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2) (1994); *Voge*, 844 F.2d at 781.

payment, which he received. Although the plaintiff vigorously challenges the ABCMR's findings, he does not allege any specific procedural irregularities by the ABCMR in his Complaint that were contrary to law, regulation, or published procedures.

The defendant counters, however, that the ABCMR's decisions were supported by substantial evidence and contends that the plaintiff has not offered any new evidence or facts that the ABCMR has not already thoroughly considered on the supplemented record before it. Although vigorously maintaining that the case should be dismissed on jurisdictional grounds as time barred, the defendant asks for judgment on the AR in the alternative.

Absent the dispositive statute of limitations jurisdictional issue previously considered, this case is otherwise ripe for disposition by Judgment Upon the Administrative Record because a *de novo* hearing in this Court would merely be an unnecessary duplication of previous ABCMR hearings. *de Cicco*, 230 Ct.Cl. at 229–30, 677 F.2d at 70; *Strickland*, 36 Fed.Cl. at 655–56.

### D. The ABCMR's decision not to award the plaintiff a disability rating for tinnitus was based upon substantial evidence in the record

■ The plaintiff complains that, in addition to his angioedema and urticaria, he was also physically unfit for military service as a result of tinnitus, which he alleges the Army improperly failed to rate when he was medically discharged in September 1993. In other words, Mr. Myers basically contends that, at the time he was discharged by the Army, his tinnitus was so severe that it also prevented him from performing his reasonable military duties. As added support for this assertion, the plaintiff emphasizes that on

February 28, 2000, the VA increased his disability rating for tinnitus from zero percent to 10 percent, effective April 7, 1999.[47] The plaintiff claims that the Board's failure to award him the additional disability retirement benefits he sought was not supported by substantial evidence and constituted a manifest error and injustice.

The defendant counters, however, that there is substantial evidence in the record which indicates that Mr. Myers was not diagnosed for tinnitus, and, even assuming he did have some tinnitus at the time of his discharge, it was clearly not serious enough when he was discharged to warrant a finding that it constituted a ratable disability rendering him unfit for continued duty. *See Johnston*, 157 Ct.Cl. at 478, 1962 WL 9299; 10 U.S.C. § 1201 (1994 & Supp. V 1999); AR 635–40, ¶ 3–1. In addition, the defendant notes that the VA also awarded the plaintiff a zero percent disability rating for tinnitus when it first adjudicated his claim in 1994.[48] The defendant maintains that it is entitled to judgment upon the AR because the plaintiff cannot prove by clear and convincing evidence that the ABCMR acted arbitrarily, capriciously, or contrary to law or that the Board's decision was unsupported by substantial evidence.

Contrary to the plaintiff's contentions, however, there is substantial evidence in the record indicating that although Mr. Myers complained of tinnitus—even assuming this condition existed to some degree at the time of his release—it was not disabling enough to render him unfit for duty. After Mr. Myers complained of a hearing loss during his MEB evaluation process, he received a specialist consult for audiology screening and was thoroughly evaluated. On July 23, 1993, a clinical audiologist found that Mr. Myers' "[h]earing sensitivity [is within normal limits] * * * speech understanding ability is excellent

---

47. *See* Pl.'s Mot. for Disability Retirement (Complaint), Ex. H; AR at 317, 321.

48. AR at 122. As noted previously, VA disability ratings, although evidence, are not binding on the ABCMR. *de Cicco*, 230 Ct.Cl. at 231, 677 F.2d at 71. Military disability ratings—unlike the VA's—are "directed to the sole question of whether the particular member of the armed forces is 'unfit to perform the duties of his office,

grade, rank or rating * * *.' " *Bennett*, 200 Ct. Cl. at 644, 1973 WL 21335 (footnote omitted). Under applicable Army regulations, a medical finding of physical impairment does not in and of itself justify a finding that a member is also unfit for duty. Fitness for duty must be judged in light of the tasks a member is called upon to perform. AR 635–40, ¶ 3–1; 10 U.S.C. § 1201 (1994 & Supp. V 1999).

* * * [i]mmittance [test] suggests normal middle ear function bilaterally."[49] Although the plaintiff attacks the Board's failure to rate him for tinnitus, the AR clearly indicates that Mr. Myers was not diagnosed with tinnitus during his audiology examination on July 23, 1993. It is also evident that the Board specifically reviewed and considered Dr. Squire's memorandum regarding the plaintiff's onset tinnitus but still concluded, nevertheless, that the plaintiff did not have a ratable hearing condition at the time of his separation.[50] Notwithstanding Dr. Squire's July 15, 1999 letter, based upon the plaintiff's audiology consult and resultant diagnosis, there is sufficient evidence in the record to support the Board's determination that the tinnitus the plaintiff complained of was not "unfitting" at that time.

When called upon to determine whether or not a service member is fit for duty in relation to a disability impairment such as tinnitus, a military board, and the Secretaries acting through them, must consider the duties the service member will be reasonably expected to perform and the degree to which the member's disability or disease will inhibit that member from generally performing his or her duties. Although the VA increased the plaintiff's disability rating for tinnitus to 10 percent 6 years after the plaintiff's discharge, that does not establish the nature and extent of the plaintiff's tinnitus at the time he separated from the Army. The VA, as noted previously, is not required to determine fitness at the time of separation; that is the responsibility of the Secretary and military authorities. *Hinkle*, 229 Ct.Cl. at 805, 1982 WL 26543. The record plainly indicates that the plaintiff was not diagnosed with tinnitus at the time of his MEB, and, even assuming that he had nominal tinnitus, there is substantial evidence in the record to support the ABCMR's finding that it did not

significantly impact the plaintiff's fitness for duty when he was discharged. *See Wronke*, 787 F.2d at 1576. There is nothing irrational or unreasonable about this finding. *Skinner*, 219 Ct.Cl. 322, 594 F.2d at 830–32.

Once again, the Court's role in cases such as these is not to reweigh the evidence; but rather, to determine whether or not a reasonable mind could support the challenged conclusion. *Heisig*, 719 F.2d at 1157. The ABCMR's decision was reasonable, based upon substantial evidence, and not otherwise contrary to law or regulation. The plaintiff has simply failed to sustain his burden of demonstrating to the contrary by clear and convincing evidence. Absent such evidence, this Court must presume that the ABCMR acted fairly and lawfully when it evaluated and reviewed Mr. Myers' case. *Grieg v. United States*, 226 Ct.Cl. at 269–70, 640 F.2d at 1268.

**E. The ABCMR's decision not to award the plaintiff a disability rating for a Major Depressive Disorder, PTSD, or any other disabling conditions was based upon substantial evidence in the record**

■ The plaintiff also complains that the ABCMR ignored relevant evidence and failed to evaluate him properly for a Major Depressive Disorder, PTSD, and other undiagnosed conditions when he separated from the Army. In other words, Mr. Myers basically contends that at the time of his discharge, his Major Depressive Disorder, PTSD, and other undiagnosed conditions were so "unfitting" that they also prevented him from reasonably performing his military duties. As added support for these assertions, the plaintiff emphasizes that on February 28, 2000, the VA awarded him a ten percent disability

---

49. AR at 179. *See also* AR at 108–10.

50. AR at 288–89, 291. "The mere presence of an impairment does not, of itself, justify a finding of unfitness because of physical disability. In each case, it is necessary to compare the nature and degree of physical disability present with the requirement of the duties the soldier reasonably may be expected to perform because of his or her office, grade, rank or rating." AR 635–40, ¶ 3–1,

App. to Def.'s Mot. for J. Upon the AR at 9. *See also Bennett*, 200 Ct.Cl. at 645, 1973 WL 21335 ("The court's decisions have long recognized that a member of the armed forces may be 'suffering from some physical disability at the time he was found fit for active military duty,' but that, nevertheless, '[n]ot all ailments or disabilities are incapacitating to the extent of requiring retirement.'") (citations omitted).

rating for PTSD, effective April 7, 1999.[51] The plaintiff argues that the ABCMR's failure to award him the additional disability retirement benefits he sought was not supported by substantial evidence and constituted a manifest error and injustice.

The defendant counters, however, that there is substantial evidence in the record which indicates that the plaintiff was never diagnosed with any other disabling known or unknown conditions, and, even assuming that he had been, the record plainly reveals that they were not sufficiently serious enough at that time to render him unfit to perform his military duties. In addition, although the plaintiff did receive an audiology consult after he complained of tinnitus prior to his MEB, the defendant notes that the record is devoid of a similar request by Mr. Myers for a mental health examination or evaluation and that the record lacks any significant, contemporaneous supporting diagnoses for other known or unknown illnesses. In addition, Mr. Myers concurred with the recommendations of both the MEB and PEB, even waiving his right to a formal hearing, yet neither the MEB nor the PEB found that the plaintiff had any other unfitting diagnosed or undiagnosed conditions.

The ABCMR thoroughly reviewed the plaintiff's applications for relief; his Army and VA records; the MEB's and PEB's previous evaluations, recommendations, and findings; the additional supplemental evidence and administrative irregularities cited by the plaintiff; plus the applicable statutes, regulations, and policies, *inter alia*, when it considered the plaintiff's requests. After carefully reviewing and evaluating the entire relevant record before it, the ABCMR ultimately concluded—not once, but twice—that the plaintiff had failed to establish the existence of probable error or injustice when it upheld the PEB's decision.

Although the plaintiff complained, *inter alia*, of nervousness, frustration, sleeping difficulties, and anxiety during his disability evaluation process, the record reflects that these symptoms—and their duty impact— were not deemed sufficiently serious enough at that time to be "unfitting," [52] unlike, for example, the plaintiff's chronic urticaria and angioedema, which were unquestionably severely incapacitating and painful. Significantly, the record also indicates that, although these various complaints were documented in the plaintiff's records, no officer in his chain of command, attending physician, or reviewing doctor at that time thought these symptoms, individually or collectively, were ever serious or unusual enough to warrant his referral for a mental health examination or evaluation.[53]

> At the time of the MEB/PEB the applicant had physical ailments which included or were exacerbated by emotional/psychological factors that were noted at the time. The fact that his MEB doctors acknowledged these factors does not demonstrate that he had PTSD. Rather, their recognition of those factors tends to show that had his situation been out of the norm for such cases they would have referred him for a mental health consultation. Notwithstanding the psychiatrist's April 1999 opinion that the applicant was disabled by PTSD at the time of his separation, there is no evidence that he had any separate emotional/psychological condition that affected his performance of duty.

AR at 291. The record also indicates that the ABCMR was aware of and considered the plaintiff's revised VA disability ratings but evidently discounted them during their deliberations.[54]

51. See Pl.'s Mot. for Disability Retirement (Complaint), Ex. H; AR at 316–18.

52. "There is no evidence of record, nor has the applicant provided sufficient evidence, which would indicate that he suffered from PTSD or other diagnosed illnesses at the time of his separation." AR at 5.

53. The record also indicates that Mr. Myers was examined, tested and evaluated for almost a month at one of the Army's premier medical centers. Although he arrived at WRAMC in early May, his MEB did not actually meet until July 27, 1993. That was more than adequate time for him to request a mental health examination or evaluation if he thought he needed such a consult as a part of his disability processing.

54. As noted previously, VA disability ratings have no mandated impact on the military's independent determinations of fitness for duty that are made while an individual is on active duty. *See Kirwin*, 23 Cl.Ct. at 507 ("The VA rating is irrele-

Although additional post-discharge medical evidence can be relevant to the determination of whether or not an individual was disabled at the time of discharge, *see Cole v. United States*, 32 Fed.Cl. 797, 804–05 (1995), none of the post-discharge diagnoses cited by plaintiff warrants a finding that he was unfit for military service due to any other known or allegedly unknown, undiagnosed conditions in 1993.[55] The 1997 post-discharge diagnosis, for example, by the Federal Bureau of Prison medical staff, plainly does not conclude that the plaintiff was unfit for military service in 1993 and fails to negate or invalidate the evidence that supported the ABCMR's carefully articulated decision. "[N]ot all ailments or disabilities are incapacitating to the extent of justifying retirement by reason of physical disqualification." *Stephens*, 174 Ct.Cl. at 373–74, 358 F.2d at 955.

Similarly, even assuming that the plaintiff had PTSD in 1991, as Dr. Algaier concluded in his 1999 post-discharge diagnosis, that opinion does not conclusively establish that the plaintiff suffered from it to such an extent in September 1993 that he was unfit to perform reasonable military duties.[56] In addition, Dr. Algaier's letter also states that

"[b]ased on review of symptoms and level of functioning during and after Desert Storm it appears Mr. Myers was not capable of performing his tour of duty." AR at 87. The record, however, does not support that conclusion. In fact, the plaintiff was subsequently promoted to the rank of Staff Sergeant on September 1, 1992, and had an otherwise commendable military record.[57]

Moreover, even assuming in retrospect that the plaintiff had received a thorough mental examination or evaluation, which might have indicated the onset of a Major Depressive Disorder or PTSD as Dr. Squire suggests (which would be highly speculative based upon the record before the Board), "that alone is not enough to warrant a finding that plaintiff had a disability rendering him unfit for duty at the time of discharge."[58] *Kirwin*, 23 Cl.Ct. at 505. Significantly, Dr. Squire clearly stopped short of diagnosing Mr. Myers with PTSD or a Major Depressive Disorder at the time of the plaintiff's evaluation, and, even assuming an incipient presence, Dr. Squire never concluded that they were "unfitting" conditions at the time.[59]

---

vant to the question of plaintiff's *fitness for duty at the time of his discharge* * * * Moreover, the trend more recently is to accord little or no weight to VA disability ratings in determining eligibility for disability retirement pay.") (emphasis added); *Bosch v. United States*, 27 Fed.Cl. 250, 267 (1992), *aff'd*, 11 F.3d 1070 (Fed.Cir. 1993) (table).

55. After reviewing the case in its entirety, the ABCMR specifically found that "[t]he overall merits of the case, including the latest submissions and arguments [were] insufficient as a basis for the Board to reverse its previous decision. * * * there is no basis for granting the applicant's request." AR at 292.

56. The plaintiff mistakenly relies on *Burkins v. United States*, 914 F.Supp. 408 (D.Colo.1996) as a precedential support for his claim. *See* AR at 12, 42–48. This decision, however, was later vacated by the United States Court of Appeals for the Tenth Circuit. *See Burkins v. United States*, 112 F.3d 444 (10th Cir.), *reh'g denied* (1997). Mr. Burkins subsequently filed suit in the United States Court of Federal Claims, where his claim was denied on the merits. *See Burkins v. United States*, Fed. Cl. No. 97–755C (Mar. 3, 1999). Mr. Burkins then appealed his case to the United States Court of Appeals for the Federal Circuit, which also ruled against him, affirming the decision of the United States Court of Federal

Claims. *See Burkins v. United States*, 230 F.3d 1374 (Fed.Cir.1999) (table).

57. *See* AR at 203, 231–40. During his 6 years and 10 months of active duty, the plaintiff was awarded, *inter alia*, the Combat Infantryman Badge, the Army Commendation Medal with two oak leaf clusters, the Army Achievement Medal with two oak leaf clusters, and the Good Conduct Medal (2nd Award).

58. *See Walters v. United States*, 175 Ct.Cl. 215, 224, 358 F.2d 957, 962 (1966) ("It is not enough, however, for plaintiff merely to show that his service-connected injuries resulted in an eventually disabling condition or that at the time of release from active duty this condition was in an incipient stage of pathological development. Plaintiff must proceed one step further and establish that the condition was of such extent and severity as to actually render him unfit for active [military] service at the time of his release or shortly thereafter.") (citing *Stone v. United States*, 160 Ct.Cl. 128, 1963 WL 8521 (1963)); *Cole*, 32 Fed.Cl. at 802–03; 10 U.S.C. § 1201 (1994 & Supp. V 1999).

59. The plaintiff was admitted to WRAMC on May 3, 1993, and after almost a full month of observation, Dr. Squire concluded that the plaintiff "has

Simply put, Mr. Myers is effectively asking the ABCMR and this Court to assume that his 1997 diagnosis for a Major Depressive Disorder and his 1999 diagnosis for PTSD conclusively demonstrate his unfitness for military service when he was discharged in 1993. The Court is unpersuaded. Any retroactive diagnosis at this late date would be highly speculative at best. *See, e.g., Dzialo,* 5 Cl.Ct. at 565. The symptoms of a Major Depressive Disorder or PTSD, if present in 1993, would have been overt and noticeable if they had been so inhibiting as to affect the plaintiff's fitness for duty. *See, e.g., Real,* 906 F.2d at 1559, n. 2. Although there is certainly some evidence supporting the plaintiff's argument that he had incipient mental health problems, there is also highly probative, substantial evidence of record that supports the ABCMR's decision. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

The plaintiff in his search for a disability retirement has not demonstrated that he merits the same by clear and convincing evidence. *Dodson,* 988 F.2d at 1204–05; *Wronke,* 787 F.2d at 1576. Absent such evidence, this Court will presume that the ABCMR did not abuse its discretion or act unlawfully when it reviewed and evaluated the plaintiff's case. *Grieg v. United States,* 226 Ct.Cl. at 269, 640 F.2d at 1268. The Court has considered the plaintiff's collateral arguments and found them wanting.

The fact that some of the evidence cited by the plaintiff could conceivably support a different conclusion is immaterial. "[I]t is not the province of this court to factually determine, *ab initio,* whether plaintiff was unfit for military service at the time of his release." *Dzialo,* 5 Cl.Ct. at 561; *Ferrell,* 23 Cl.Ct. at 568; *de Cicco,* 230 Ct.Cl. at 229–30, 677 F.2d at 70. The evidence, upon which the Board relied, is the type of evidence that a reasonable mind might accept as adequate to support the conclusion that Mr. Myers was not entitled to additional disability ratings as a result of tinnitus, a Major Depressive Disorder, PTSD, or any other diagnosed or undiagnosed condition when he was discharged in September 1993. *See* 10 U.S.C. § 1201 (1994 & Supp. V 1999); AR 635–40, ¶ 3.1. "When reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the military board." *Rose,* 35 Fed.Cl. at 514. *See also Heisig,* 719 F.2d at 1156–57; *Bosch,* 27 Fed.Cl. at 264; *Kirwin,* 23 Cl.Ct. at 505; *Hinkle,* 229 Ct.Cl. at 805, 1982 WL 26543.

The Court is not required to reweigh the evidence that the ABCMR considered "but [to determine] whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig,* 719 F.2d at 1157. The ABCMR's decision, after a careful review of the entire record before it, to deny the plaintiff's application to correct his military records was not arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence.

With regard to the defendant's motion to dismiss, once the defendant challenged this Court's jurisdiction, the plaintiff could no longer rely on unsupported allegations of jurisdiction but must instead bring forth evidence to establish jurisdiction. *See Trauma Serv. Group v. United States,* 104 F.3d 1321, 1324 (Fed.Cir.1997); *Reynolds,* 846 F.2d at 747–48. The plaintiff filed his case in this Court on May 25, 2000, and, even assuming that the statute began running on the date of his September 13, 1993 discharge, more than six years had passed since the alleged causes of action accrued. Accordingly, this Court does not have subject matter jurisdiction, and the plaintiff's claims must be dismissed with prejudice, because the plaintiff has failed to establish that they were not time barred by the statute of limitations. Waivers of sovereign immunity must be strictly con-

had problems with recurrent urticaria *which has prevented him from performing his duties."* AR at 189 (emphasis added). He also addressed the plaintiff's continuing need for allergy immunotherapy in his disposition memorandum, but significantly, the Court notes that Dr. Squire makes no mention of any other additional potentially unfitting diagnosed or undiagnosed illnesses at that critical point in time. AR at 189–90. In fact, Dr. Squire's final diagnosis at that time was chronic urticaria. AR at 190. *See also* AR at 313–15.

strued. *See Coon,* 30 Fed.Cl. at 534–35; *Hart,* 910 F.2d at 817.

## CONCLUSION

This Court finds that the plaintiff's claims are barred by the applicable six-year statute of limitations. The defendant's motion to dismiss is granted, and the plaintiff's Complaint is to be dismissed with prejudice. Even assuming that this case were not otherwise time barred, the defendant would be entitled to Judgment Upon the Administrative Record, and the plaintiff's cross-motion for Judgment on the Administrative Record would be denied. The clerk shall enter judgment for the defendant.

Each party is to bear its own costs.